# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **ANTHONY WARREN,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:09-CV-1025-RRA** |
| | } | |
| **CITY OF BIRMINGHAM, et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION

This case is before the court on the Magistrate Judge's Report and Recommendation (Doc. #57), entered June 23, 2010.  For the following reasons, the court concludes that the Report and Recommendation is due to be adopted.

## I.      STATEMENT OF FACTS[1]

On January 23, 2008, Plaintiff, while driving, noticed a home for rent.  (Doc. #26 ¶ 21). Plaintiff stopped his vehicle and recorded the rental information.  (Doc. #26 ¶ 21).  At that point, he observed a parked car and watched an unidentified individual leave a nearby house, approach the parked car, and hand an object to the car's driver.  (Doc. #26 ¶ 21).  Plaintiff returned to his vehicle and drove to a store.  (Doc. #26 ¶ 21).  Once he arrived at the store, the previously observed car pulled into the parking lot and, in fact, directly behind Plaintiff.  (Doc. #26 ¶ 21).  The driver, who was wearing plainclothes, exited the car and, without identifying himself as a police officer, reached

---

[1]In addressing issues related to a defense of qualified immunity and Federal Rule of Civil Procedure 12(b)(6), the court accepts all well-pleaded facts in the Complaint as true and draws all inferences in Plaintiff's favor.  *See, e.g.,* *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007); *see also Williams v. Ala. State Univ.*, 102 F.3d 1179, 1182 (11th Cir. 1997) (applying this standard in the qualified immunity context).  These may not be the actual facts of this case, but the court must accept them as true only for purposes of this opinion.  *See, e.g., Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282 n.1 (11th Cir. 2006).

for his weapons.  (Doc. #26 ¶ 21).  The driver yelled "that Plaintiff was in the wrong neighborhood and insisted he get in the car to 'talk.'" (Doc. #26 ¶ 21).  In response to what Plaintiff perceived to be "erratic behavior," he began running, and the driver tasered him from behind.  (Doc. #26 ¶ 21).  Although the taser caused Plaintiff to stumble, he continued to run and, once he reached his vehicle, drove away.  (Doc. #26 ¶ 21).  Thereafter, "police officers instigated and continued an unwarranted high-speed pursuit."  (Doc. #26 ¶ 21).  During the pursuit, and as a result of a police officer's defensive maneuvering, Plaintiff lost control of his vehicle, which rolled into a ditch.  (Doc. #26 ¶ 21).  Because of the collision, Plaintiff was ejected from the driver's side window of his vehicle and landed unconscious in a ditch.  (Doc. #26 ¶ 21).

After Plaintiff landed, and while unconscious, the police officers "descended on [him] and started to brutally beat him with excessive force.  At no time did Plaintiff move or offer any threat of harm to [them]."  (Doc. #26 ¶ 22).  One of the police officers repeatedly struck Plaintiff's body with a billy club.  (Doc. #26 ¶ 22).  Another police officer "pummeled" Plaintiff's head and upper body with his fist.  (Doc. #26 ¶ 22).  Three other police officers kicked Plaintiff "numerous times about his body."  (Doc. #26 ¶ 22).  According to Plaintiff, he "was unconscious and hospitalized for [four] days after having been severely beaten by the numerous police officers."  (Doc. #26 ¶ 23).

Plaintiff had no recollection of the events occurring after he ejected from his vehicle.  (Doc. #26 ¶ 24).  Nevertheless, a video camera, mounted in a police cruiser participating in the high-speed pursuit, captured what occurred.  (Doc. #26 ¶ 24).  Plaintiff was charged with several offenses, all arising from the high-speed pursuit, and during the criminal prosecution, "the portion of tape where the [police officers] brutally beat . . . Plaintiff was suppressed by the City of Birmingham and deleted from evidence provided to Plaintiff's defense counsel."  (Doc. #26 ¶¶ 22, 24).  According to Plaintiff,

the "City of Hoover and [Sergeant Norm] McDuffy instructed a Birmingham Police Officer copying the tapes from the cars to provide . . . an altered version of the video which deleted the beating by the Birmingham officers so that the tape could be used in the prosecution of the case against . . . Plaintiff."  (Doc. #26 ¶ 27).  Eventually, however, Plaintiff pleaded guilty to the charges pending in state court.  (Doc. #26 ¶ 24).  Approximately one year later, Plaintiff received the full videotape, which included the events occurring after Plaintiff was ejected from his vehicle.  (Doc. #26 ¶ 24).

## II.   PROCEDURAL HISTORY

Plaintiff filed this lawsuit on May 26, 2009.  (Doc. #1).  In his initial Complaint, he sued the City of Birmingham, Chief of Police A.C. Roper, and Officers Heath Boackle, Thomas Cleveland, Barrett Dewitt, David Doran, and Kenneth Prevo.  (Doc. #1 at 1).  Plaintiff alleged causes of action for excessive force, assault and battery, failure to intervene, negligent supervision, inadequate training, unlawful search and seizure, initiation of high-speed pursuit, denial of due process, civil conspiracy, deliberate indifference, and outrage.  (Doc. #1 at 7-12).  On December 8, 2009, Plaintiff amended his Complaint and added the following Defendants: (1) Sergeant Dexter Cunningham; (2) Sergeant Frank Majors; (3) Lieutenant Gary Finley; (4) Captain Jamal McCaskey; (5) Sergeant Norm McDuffy; and (6) the City of Hoover.  (Doc. #26).  Plaintiff restyled his fourth count as "failure to supervise" rather than "negligent supervision;" otherwise, the Amended Complaint and the initial Complaint contain the same causes of action.  (Doc. #26 at 9-15).

On January 25, 2010, Defendants City of Hoover and McDuffy filed a Motion to Dismiss and accompanying brief.  (Docs. #37, 38).  Specifically, they moved to dismiss (1) the negligent training and negligent supervision claim against Defendant City of Hoover; (2) the outrage claim against Defendant McDuffy; (3) the due process claim against Defendants City of Hoover and McDuffy; (4)

the civil conspiracy claim against Defendant McDuffy.  (Doc. #37 at 1-2).  Additionally, Defendant McDuffy asserted qualified immunity against Plaintiff's due process claim.  (Doc. #37 at 2).  The court ordered briefing.  (Jan. 26, 2010 Order).  On February 5, 2010, Plaintiff filed his responsive submission, and on February 16, 2010, Defendants City of Hoover and McDuffy replied.  (Docs. #41, 43).

On June 23, 2010, the Magistrate Judge entered his Report and Recommendation, which recommended the dismissal of Plaintiff's claims for negligent training and supervision, outrage, due process, and civil conspiracy.  (Doc. #57).  Moreover, the Magistrate Judge recommended that Defendant McDuffy is entitled to qualified immunity insofar as Plaintiff's due process claim is concerned.  (Doc. #57).  On July 7, 2010, Plaintiff filed his objection to the Magistrate Judge's Report and Recommendation.  (Doc. #58).  On July 16, 2010, Defendants responded.  (Doc. #59). On July 21, 2010, because the parties had not consented to jurisdiction under the Federal Magistrates Act, 28 U.S.C. § 636(c), the Magistrate Judge directed the Clerk of Court to refer the Motion to Dismiss to a District Judge for review.  (Doc. #60).  The same day, the Clerk of Court referred the Motion to the undersigned.  The Motion to Dismiss, having been fully briefed and reviewed by the Magistrate Judge, is properly under submission.

## III.   DISCUSSION

### A.   Counts Four and Five

In the Magistrate Judge's Report and Recommendation, the parties were instructed that "[w]ritten objections shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection."  (Doc. #57 at 14). According to the Federal Magistrates Act, "any party may serve and file written objections to [the

magistrate judge's report and recommendation] . . . . A judge of the [district] court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations *to which objection is made*." 28 U.S.C. § 636(b)(1)(C) (emphasis added). As the Supreme Court has explained, the Act "does not on its face require any review at all, by either the district court or the court of appeals, of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *see also id.* at 151 ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.").

In *Thomas*, however, the Supreme Court "stopped short of deciding that the [Federal Magistrates] Act mandates a waiver rule, holding only that it permits courts of appeal to adopt one as an exercise of supervisory power." 12 FEDERAL PRACTICE & PROCEDURE – CIVIL § 3070.1 (2d ed. 2010). In this regard, the Eleventh Circuit has exercised its supervisory power and determined that a party's failure to object to factual findings *or legal conclusions* constitutes a waiver of further review. *See United States v. Schultz*, 565 F.3d 1353, 1361 (11th Cir. 2009) ("Schultz never gave the district court an opportunity to 'effectively review' the magistrate judge's factual findings and legal conclusion, and we lack jurisdiction to hear it now."); *Peter Letterese & Assocs. v. World Inst. of Scientology Enters.*, 533 F.3d 1287, 1299 n.12 (11th Cir. 2008) ("Since [the plaintiff] failed to make a timely objection to the magistrate judge's denial of the motion . . . [the plaintiff] has waived this claim.") (citing *Farrow v. West*, 320 F.3d 1235, 1249 n.21 (11th Cir. 2003) (collecting cases)); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) ("[T]he failure of a party to file written objections to proposed findings and recommendations in a magistrate's report . . . shall bar the party from a *de novo* determination by the district judge of an issue covered in the report . . . .").

Here, the Magistrate Judge recommended that Count Four (Failure to Supervise) and Count Five (Inadequate Training) should be dismissed with prejudice. In Plaintiff's objection, however, he does not argue the merits of that recommendation; instead, he limits his objection only to Counts Eight (Due Process), Nine (Civil Conspiracy), and Eleven (Outrage). Accordingly, the court concludes that Plaintiff has waived his objection to the Magistrate Judge's recommendation insofar as Counts Four and Five are concerned. The recommendation, therefore, is due to be adopted regarding the dismissal of Counts Four and Five in Plaintiff's Amended Complaint.

**B.      Count Eight**

In Count Eight, Plaintiff alleges a denial of due process. (Doc. #26 ¶¶ 46-47). According to Plaintiff, "Defendants City of Birmingham, Roper, Cunningham, Majors, Finley, McCaskey, City of Hoover, and McDuffy denied [him] his due process by concealing their behavior and tampering with evidence pertinent to his criminal defense and interfering with the administration of justice in violation of [his] civil rights as guaranteed by the United States Constitution." (Doc. #26 ¶ 47). Specifically regarding Defendants City of Hoover and McDuffy, they "instructed a Birmingham Police Officer copying the tapes from the cars to provide . . . an altered version of the video which deleted the beating by the Birmingham officers so that the tape could be used in the prosecution of the case against the Plaintiff." (Doc. #26 ¶ 27). The Magistrate Judge recommended dismissal with prejudice of this claim against Defendants City of Hoover and McDuffy. (Doc. #57 at 13-14). The court agrees.

Although not specifically labeled, it is apparent that Count Eight is brought under 42 U.S.C. § 1983 to vindicate due process rights as detailed in *Brady v. Maryland*, 373 U.S. 83 (1963). In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an

accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. Further refining *Brady*, the Supreme Court explained that due process requires the disclosure of both exculpatory and impeachment evidence, provided that such evidence is material. *Giglio v. United States*, 405 U.S. 150, 153-54 (1972). Evidence is material under *Brady* "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). Synthesizing these principles, the Eleventh Circuit concluded that, to state a *Brady* violation generally, a criminal defendant must show that "(1) the government possessed favorable evidence to the defendant; (2) the defendant does not possess the evidence and could not obtain the evidence with any reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the evidence been disclosed to the defendant, there is a reasonable probability that the outcome would have been different." *United States v. Vallejo*, 297 F.3d 1154, 1164 (11th Cir. 2002) (citing *United States v. Meros*, 866 F.2d 1304, 1308 (11th Cir. 1989)).

Importantly, *Brady* and its progeny concerned only a prosecutor's duty to disclose exculpatory and impeachment evidence. *Brady*, 373 U.S. at 87. The Eleventh Circuit, however, first addressed the possible applications of *Brady* to police officers in *Kelly v. Curtis*, 21 F.3d 1544 (11th Cir. 1994). In *Kelly*, a police officer failed to disclose to the prosecutor an exculpatory report because she "had every reason to think that the district attorney's office already knew about [it]." *Id.* at 1552. Consequently, the defendant received the evidence after having been jailed for one year while awaiting trial. *Id.* at 1549. Upon the disclosure, the prosecutor dropped all charges against the defendant. *Id.* On that record, the court concluded that the "Constitution places the duty to disclose

7

known exculpatory evidence upon prosecutors.  It imposes no obligation upon law enforcement officers to second guess prosecutors about whether evidence known to them is exculpatory." *Id.* at 1552 (citation omitted).  Accordingly, the Eleventh Circuit reversed the district court's denial of the police officer's qualified immunity claim.  *Id.*

*Kelly*, however, is silent as to whether the Due Process Clause imposes upon a police officer a duty to disclose exculpatory or impeachment evidence believed by the police officer to be unknown to the prosecutor.  Two years after the *Kelly* decision, however, in *McMillian v. Johnson*, 88 F.3d 1554 (11th Cir. 1996), the Eleventh Circuit squarely considered precisely that issue.  There, the Eleventh Circuit explained that "an accused's due process rights are violated when the police conceal exculpatory or impeachment evidence." *Id.* at 1569 (citation omitted); *see also Freeman v. Georgia*, 599 F.2d 65, 69 (5th Cir. 1979) ("The duty to [disclose] is that of the state, which ordinarily acts through the prosecuting attorney; but if he too is the victim of police suppression of the material information, the state's failure is not on that account excused.").  Therefore, absent a police officer's belief that the prosecutor knows about the subject evidence, *Kelly*, 21 F.3d at 1552, due process requires the police officer to disclose the material exculpatory or impeachment evidence, and a failure to comply with this requirement is a cognizable injury under the Due Process Clause. *McMillian*, 88 F.3d at 1569.

Despite the seemingly coextensive nature of a prosecutor's and a police officer's respective duties under *Brady*, the Eleventh Circuit in *Porter v. White*, 483 F.3d 1294 (11th Cir. 2007), distinguished each actor's required level of culpability.  Under *Brady*, a prosecutor violates the Due Process Clause "irrespective of [his or her] good faith or bad faith." *Brady*, 373 U.S. at 87.  But according to the Eleventh Circuit, *Brady*'s no-fault standard is inapplicable when the violation is

attributed solely to the police officer.  *Porter*, 483 F.3d at 1308.  Specifically, the *Porter* court held that "mere negligence or inadvertence on the part of a law enforcement official in failing to turn over *Brady* material to the prosecution, which in turn causes a defendant to be convicted at a trial that does not meet the fairness requirements imposed by the Due Process Clause, does not amount to a 'deprivation' in the constitutional sense." *Id.*  Under *Porter*, therefore, although a prosecutor violates *Brady* notwithstanding his or her mental state, a due process claim may not proceed against a police officer unless he or she deliberately withheld the subject evidence.  *Id.* (citing *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986)).

Accordingly, in this Circuit, it is clear that a plaintiff may state a *Brady* claim against a police officer, but the claim is analytically distinct from a claim attributed to a prosecutor.  In light of *Kelly*, *McMillian*, and *Porter*, and considering the general *Brady* framework, the court concludes that the following allegations are generally required to state a § 1983 claim against a police officer: (1) the police officer possessed exculpatory or impeachment evidence; (2) the civil plaintiff did not possess the evidence and could not have obtained the evidence with any reasonable diligence; (3) the police officer did not disclose the evidence to either the civil plaintiff or the prosecutor; (4) the police officer had no reason to believe that the prosecutor was aware of the exculpatory or impeachment evidence; (5) the police officer deliberately suppressed the evidence; and (6) if the evidence had been disclosed to the civil plaintiff, then there is a reasonable probability that the criminal proceeding's outcome would have been different.

Although a claim may be stated, this conclusion presupposes the applicability of *Brady* when a plaintiff pleads guilty in the underlying prosecution giving rise to the civil action.  At least four Circuit Courts had concluded that *Brady* wholly applies to prosecutions culminating in a guilty plea

9

notwithstanding the absence of a trial. *See, e.g.*, *United States v. Avellino*, 136 F.3d 249 (2d Cir. 1998); *Sanchez v. United States*, 50 F.3d 1448 (9th Cir. 1995); *White v. United States*, 858 F.2d 416 (8th Cir. 1988); *Campbell v. Marshall*, 769 F.2d 314 (6th Cir. 1985). "The continued validity of these cases, however, is called into question by the Supreme Court's more recent decision in *United States v. Ruiz*, 536 U.S. 622 (2002)." *Mathis v. Ludwick*, No. 06-10359, 2008 U.S. Dist. LEXIS 113514, at *36 (E.D. Mich. May 30, 2008). In *Ruiz*, the Supreme Court reversed the Ninth Circuit, which had held that a defendant's due process rights are violated "unless prosecutors first made the same disclosure of material impeachment information that the prosecutors would have had to make had the defendant insisted upon a trial." *Ruiz*, 536 U.S. at 629. Instead, according to the Supreme Court, the Due Process Clause does not require prosecutors to disclose material impeachment information or affirmative defense evidence if the criminal defendant pleads guilty.[2] *Id.* at 633; *see also Davidson v. United States*, 138 Fed. App'x 238, 239 (11th Cir. 2005) ("[T]here is no constitutional requirement for the government to disclose impeachment evidence in advance of a guilty plea.") (citation omitted). *Ruiz* accords with the Supreme Court's earlier decision in *Tollett v. Henderson*, 411 U.S. 258, 267 (1973), which acknowledges that a defendant's guilty plea waives the usual panoply of trial-related protections:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice

---

[2] Although *Ruiz* considered a prosecutor's duty to disclose material impeachment or affirmative defense evidence, there is no indication in the decision that due process requirements stretch broader when police officers are the alleged wrongdoers.

> he received from counsel was not within the standards set forth in
> *McCann* [*v. Richardson*, 397 U.S. 759 (1970)].

411 U.S. 258, 267 (1973).

After *Ruiz*, therefore, it is apparent that the Due Process Clause does not demand pre-guilty plea disclosure of impeachment or affirmative defense evidence – despite the evidence's materiality. Nevertheless, "the Supreme Court has not addressed the question of whether the *Brady* right to exculpatory information, in contrast to impeachment information, might be extended to the guilty plea context." *United States v. Moussaoui*, 591 F.3d 263, 286 (4th Cir. 2010) (citations omitted). Pre-*Ruiz*, the Fifth Circuit in *Matthew v. Johnson*, relying on *Brady*'s materiality analysis, held that "[b]ecause a *Brady* violation is defined in terms of the potential effects of undisclosed information on a judge's or jury's assessment of guilt, it follows that the failure of a prosecutor to disclose exculpatory information to an individual waiving his right to trial is not a constitutional violation." 201 F.3d 353, 361-62 (5th Cir. 2000); *see also United States v. Conroy*, 567 F.3d 174, 179 (5th Cir. 2009) (reaffirming *Matthews* post-*Ruiz*).  In contrast, the Seventh Circuit, although deciding the case on alternative grounds, strongly hinted that *Ruiz* does not completely foreclose *Brady*'s applicability when a criminal defendant pleads guilty: "*Ruiz* indicates a significant distinction between impeachment information and exculpatory evidence of actual innocence.  Given this distinction, it is highly likely that the Supreme Court would find a violation of the Due Process Clause if prosecutors or other relevant government actors have knowledge of a criminal defendant's factual innocence but fail to disclose such information to a defendant before he enters into a guilty plea." *McCann v. Mangialardi*, 337 F.3d 782, 788 (7th Cir. 2003); *see also United States v. Ohiri*, 133 Fed. App'x 555, 562 (10th Cir. 2005) (applying *Mangialardi* in the § 2255 context).

In this Circuit, our court of appeals has expressly declined to address the issue.  *United States v. Matthews*, 168 F.3d 1234, 1242 (11th Cir. 1999) ("We do not need to decide today, however, whether a guilty plea waives a defendant's claim under *Brady*, or – assuming that a *Brady* claim is not waived by a guilty plea – whether the *Brady* material must be known to the prosecution before the plea or merely before sentencing.").  In light of these developments pre- and post-*Ruiz*, two dispositive conclusions follow: (1) Defendant McDuffy is entitled to qualified immunity; and (2) Plaintiff has not stated a *Brady* claim against Defendant City of Hoover.

First, "[t]o invoke qualified immunity, the official must first establish that he was acting within the scope of his discretionary authority.  The burden then shifts to the plaintiff to overcome the defense of qualified immunity."  *Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir. 2009) (citing *Bates v. Harvey*, 518 F.3d 1233, 1239 (11th Cir. 2008)).  In this case, there is no dispute that Defendant McDuffy was acting within the scope of his discretionary authority by allegedly withholding and/or altering the videotape.  (Doc. #41 at 13).

Once the burden shifts, a plaintiff must show that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation."  *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).  In *Saucier v. Katz*, 533 U.S. 194, 201 (2001), the Supreme Court mandated that courts consider, first, whether a constitutional right had been violated and only then, if applicable, whether the right had been clearly established at the time of the violation.  In *Pearson v. Callahan*, however, the Court overruled *Saucier* insofar as it specified that particular sequencing of the qualified immunity analysis.  129 S. Ct. at 818 ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the

12

circumstances in the particular case at hand.").  This court, therefore, may address the qualified immunity prongs in any appropriate order according to the particular facts and legal issues involved in the case.

Here, the court concludes that Defendant McDuffy is entitled to qualified immunity.  If the suppressed videotape is impeachment or even affirmative defense evidence (as Plaintiff seems to suggest), then *Ruiz* precludes Plaintiff from seeking relief under § 1983.  Qualified immunity applies because, at the threshold, Plaintiff must assert an actual constitutional violation. *See, e.g.*, *Townsend*, 601 F.3d at 1158.  On the other hand, even assuming that the evidence is exculpatory, as Plaintiff asserts without elaboration, Defendant McDuffy still is entitled to qualified immunity.  There is a substantial question of law as to whether, at the relevant time, a police officer was on notice that he would violate a criminal defendant's due process rights by withholding materially exculpatory evidence when the criminal defendant pleads guilty rather than proceeds to trial.  The law, therefore, was not clearly established "so as to provide [a] public official[] [in this case, McDuffy] with 'fair notice' that the conduct alleged is prohibited." *Randall v. Scott*, No. 09-12862, 2010 U.S. App. LEXIS 13377, at *37 (11th Cir. June 30, 2010) (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). Despite the Seventh and Tenth Circuits' suggestions in light of *Ruiz* that *Brady* applies when a criminal defendant pleads guilty, critically, neither the Supreme Court nor the Eleventh Circuit has squarely addressed the issue. *See D'Aguanno v. Gallagher*, 50 F.3d 877, 881 n.6 (11th Cir. 1995) ("The remaining cases on which plaintiffs rely do not come from the U.S. Supreme Court [or] the Eleventh Circuit Court of Appeals . . . and, therefore, cannot show that plaintiffs' right to due process was clearly established.").  Defendant McDuffy is entitled to qualified immunity against Plaintiff's

due process claim because the alleged constitutional violation was not clearly established at the time of the incident.

Second, Plaintiff's *Brady* claim against Defendant City of Hoover is due to be dismissed. Considering *Ruiz*, Plaintiff's only basis for relief would suggest that the suppressed or altered videotape is materially exculpatory rather than impeachment or affirmative defense evidence. Although there is an open question as to whether *Brady* applies pre-plea to exculpatory evidence, the court assumes without deciding that the Due Process Clause obligates a police officer to disclose material exculpatory evidence before the criminal defendant enters his guilty plea. Even with that assumption, however, Plaintiff's due process claim against Defendant City of Hoover is due to be dismissed because a recording of events that occurred after the charged criminal conduct and while Plaintiff was unconscious cannot be exculpatory under the facts of this case.

According to Plaintiff, in the underlying criminal prosecution, he was charged with and pleaded guilty to offenses "arising from the high-speed pursuit," including driving without a seatbelt. (Doc. #26 ¶¶ 21, 24; Doc. #41 at 2). The suppressed portion of the videotape depicted events occurring after Plaintiff "was ejected from the driver's side window of the vehicle and landed unconscious in a ditch." (Doc. #26 ¶ 21). Only after Plaintiff landed unconscious did Defendants "descend[] on [him] and start[] to brutally beat him with excessive force." (Doc. #26 ¶ 22). Plaintiff's single justification for salvaging the due process claim is that "[t]he mere fact that a police officer . . . alters a piece of evidence to be used in a criminal prosecution, that he directed that evidence of a beating of an unconscious man be withheld from [a criminal defendant], should be sufficient and self[-]evident when it comes to that evidence's usefulness for exculpatory and impeachment value." (Doc. #58 at 12). The court disagrees.

14

Considering the allegations in the light most favorable to Plaintiff, it is impossible – both as a matter of law and logic – for evidence of an event, which occurred subsequent to the admitted illegality, to have exculpated Plaintiff.  To illustrate, regarding the driving-without-a-seatbelt charge, evidence of the alleged battery, which transpired after the fact and while Plaintiff was unconscious, would not suggest in any way Plaintiff's innocence.  Regarding the other charges, which arose as a result of events during the chase, Plaintiff's claim to relevance is similarly infirm.  The evidence could not have "go[ne] to the heart of [Plaintiff's] guilt or innocence," *United States v. Starusko*, 729 F.2d 256, 260 (3d Cir. 1984), and, correspondingly, risen to the level of materiality required under *Brady* and its progeny.  If, on the other hand, Plaintiff had been charged with criminal conduct allegedly occurring after the ejection, then the videotape possibly would have been exculpatory – or, at the very least, the case would present a closer question regarding relevance and materiality.  But, as Defendants acknowledge and Plaintiff concedes, the charged acts occurred before the asserted use of excessive force, which necessarily precludes the evidence's relevance to Plaintiff's purported innocence.  Therefore, Plaintiff's *Brady* claim against Defendant City of Hoover is due to be dismissed, and the Magistrate Judge's recommendation is due to be adopted.

## C.    Count Eleven

In Count Eleven, Plaintiff alleges a cause of action for outrage against Defendant McDuffy.  Under Alabama law, "[f]or a plaintiff to recover under that tort, he must demonstrate that the defendant's conduct (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it."  *Green Tree Acceptance, Inc. v. Standridge*, 565 So. 2d 38, 44 (Ala. 1990) (citing *Am. Road Service Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1981)).  Importantly, the touchstone inquiry is whether the conduct is "so

extreme in degree as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized society." *Id.* (citing *MacIsaac v. WZEW-FM Corp.*, 495 So. 2d 649, 651 (Ala. 1986)); *see also* RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1977) ("Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'").

The tort of outrage "is an extremely limited cause of action." *Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000). The Alabama Supreme Court "has recognized it in regard to only three kinds of conduct: (1) wrongful conduct in the family burial context; (2) barbaric methods employed to coerce an insurance settlement; and (3) egregious sexual harassment." *Id.* (citations omitted). Here, Plaintiff's allegations do not involve family burials, insurance settlements, or sexual harassment. Nevertheless, a plaintiff still may state a claim depending on the facts of the case. *See, e.g.*, *Tinker v. Beasley*, 429 F.3d 1324, 1330 (11th Cir. 2005) (determining that the purportedly outrageous conduct fell "into none of these categories" but nevertheless evaluating the "extreme and outrageous" nature of the act); *Garrett v. Stanton*, No. 08-175, 2008 U.S. Dist. LEXIS 86249, at *38-39 n.17 (S.D. Ala. Oct. 22, 2008) ("Notwithstanding the narrowly cabined application of this tort, Alabama courts have never held that, as a matter of law, outrage cannot and does not apply to any circumstances other than burials, insurance coercion, and sexual harassment.").

In Count Eleven, as the basis for his outrage claim, Plaintiff alleges that "Defendant Officers caused Plaintiff to suffer great physical and emotional distress . . . when they savagely and brutally beat the Plaintiff while he lay unconscious in a ditch. Defendants proffered edited and altered evidence regarding the incidents involving the Plaintiff and further concealed the evidence and the brutal beating recorded on same for over thirteen months." (Doc. #26 ¶ 53). From this allegation,

16

it is not immediately apparent whether Plaintiff's outrage claim against Defendant McDuffy involves the alleged assault and/or the suppression of evidence. But in Plaintiff's objection to the Magistrate Judge's Report and Recommendation, he clarifies that, as against Defendant McDuffy, the basis for his claim is only the alleged tampering with and suppression of the videotape. (Doc. #58 at 4-6). Plaintiff has not argued that the assault directly involved or indirectly implicated Defendant McDuffy. Moreover, in his objection, Plaintiff offers further details regarding the basis for his claim: "Defendant McDuffy, knowing that the tape was going to be used in the prosecution of an attempted murder case, directed a Birmingham evidence technician to delete the beating from the tape. . . . Defendant McDuffy acted in concert with Defendant Cunningham to have the evidence, which was to be utilized in a felony prosecution, altered." (Doc. #58 at 6).

Thus, the sole issue is whether a police officer's suppression and alteration of evidence purportedly relevant to a criminal prosecution, which concludes as a result of the defendant's guilty plea, constitutes "extreme and outrageous" conduct under Alabama law. Based on Plaintiff's allegations, Defendant McDuffy's conduct "was not 'so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.'" *McCray v. City of Dothan*, 169 F. Supp. 2d 1260, 1300 (M.D. Ala. 2001) (quoting *Inmon*, 394 So. 2d at 365). "Such conduct, while certainly not laudable or praiseworthy, falls well[] short of extreme and outrageous conduct extending beyond all possible bounds of decency." *Phillips v. Irvin*, No. 05-131, 2006 U.S. Dist. LEXIS 39871, at *90 n.55 (S.D. Ala. June 14, 2006), *aff'd in part and rev'd in part on other grounds*, 222 Fed. App'x 928 (11th Cir. 2007).

A survey of the caselaw confirms this conclusion. The court has located only three cases permitting a plaintiff's outrage claim against a police officer to proceed beyond either a motion to

dismiss or a motion for summary judgment.[3]  In the first case, *Hawkins v. City of Greenville*, 101 F. Supp. 2d 1356 (M.D. Ala. 2000), the Middle District of Alabama denied the defendants' motion to dismiss insofar as it concerned the plaintiffs' outrage claim.  Specifically, two police officers, without a warrant or consent, forcibly entered the plaintiffs' home, severely beat the plaintiffs, and sprayed them with chemical mace and pepper spray.  *Id.* at 1359.  The defendant police officers, in their motion to dismiss, argued that, under Alabama law, the conduct did "not rise to the level of outrageous conduct."  *Id.* at 1363.  The Middle District of Alabama, relying on the pre-*Twombly* standard of review, disagreed and concluded that the plaintiffs had stated a cognizable claim.  *Id.* ("The court cannot conclude without some factual development, or without citation to a case precluding the Plaintiff from proceeding on this claim, that Plaintiffs can prove no set of facts in support of the claims in the complaint that would entitle them to relief.").  In this regard, *Hawkins* is inapposite because, under *Twombly*, the court is required to assess the legal sufficiency of claims based on the facts as alleged rather than on the possibility of subsequent factual development.  *See, e.g.*, *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260-61 (11th Cir. 2009) ("In *Twombly*, the Supreme Court emphasized a complaint requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations in a complaint need not be detailed but must be enough to raise a right to relief above the speculative level on the

---

[3]Indeed, in the typical case of excessive force claims against police officers, the courts have reached near unanimity that an outrage claim is unavailable as a matter of law.  *See, e.g.*, *Young v. City of Gulf Shores*, No. 07-810, 2009 U.S. Dist. LEXIS 28191 (S.D. Ala. Apr. 2, 2009) (dislocating a cooperative arrestee's shoulder and spraying her in the face with pepper spray is not "extreme and outrageous" under Alabama law); *Hamilton v. City of Jackson*, 508 F. Supp. 2d 1045 (S.D. Ala. 2007) (using unwarranted and excessive force, including choking the plaintiff for thirty to forty seconds, is not "extreme and outrageous" under Alabama law); *McCray v. City of Dothan*, 169 F. Supp. 2d 1260 (M.D. Ala. 2001) (using excessive force, including slamming the deaf plaintiff's head into a table and causing it to break, was not "extreme and outrageous" conduct under Alabama law); *Newton v. Town of Columbia*, 695 So. 2d 1213 (Ala. Civ. App. 1997) (acting extra-jurisdictionally, restraining the plaintiff with a boot after having thrown her to the ground, and assaulting her with a blackjack is not "extreme and outrageous" under Alabama law).

assumption that all the allegations in the complaint are true (even if doubtful in fact).") (citations and quotation marks omitted). *Hawkins*, because it applied the more permissive pleading standard that predated *Twombly*, does not assist with the present inquiry.

In the second case, *Woodley v. City of Jemison*, 770 So. 2d 1093 (Ala. Civ. App. 1999), the Alabama Court of Civil Appeals reversed the trial court, which had granted summary judgment on the plaintiffs' outrage claim. In particular, the plaintiffs received several obscene telephone calls and a bomb threat. 770 So. 2d at 1094. The plaintiffs, for a variety of circumstantial reasons, suspected the defendant police officer of having placed the calls. *Id.* The plaintiffs changed their telephone number, which was unlisted, and did not tell anyone, including family, their new number. *Id.* at 1095. When the plaintiff informed the defendant police officer, he insisted on completing a criminal report. *Id.* The plaintiffs acquiesced, and during the investigation, the defendant police officer asked for the new, unlisted telephone number, which the plaintiffs supplied. *Id.* Thereafter, the obscene calls resumed. *Id.* In addition, the defendant police officer followed one of the plaintiffs in his police cruiser, arbitrarily stopped her under the pretense of a traffic warning, and appeared at their neighbor's home claiming that the alarm was tripped. *Id.* The plaintiffs filed their lawsuit and alleged the tort of outrage, which the trial court dismissed on summary judgment. *Id.* The Alabama Court of Civil Appeals reversed the trial court regarding the outrage claim:

> The [plaintiffs] presented substantial evidence from which a jury could reasonably determine that [the defendant police officer] was making the obscene telephone calls . . . . Because [the defendant] is a police officer, the public places its trust in him to an extent far greater and far more easily than it does in almost any other individuals in any other profession. In that position of trust, [he] has access to information not readily available to most people. If a jury determined that [he] was making obscene telephone calls to [the plaintiffs], then it should determine whether that conduct – that

19

> breach of public trust – is so outrageous that it goes beyond the
> bounds of decency.

*Id.* at 1096.

If the analysis stopped there, Plaintiff may have a solid argument that *Woodley* suggests he can assert an outrage claim here. But in a later case, the Eleventh Circuit confined *Woodley* to its facts. In *Tinker v. Beasley*, 429 F.3d 1324 (11th Cir. 2005), the Eleventh Circuit reversed the district court's denial of summary judgment on the plaintiff's outrage claim. There, the plaintiff was identified by an eye-witness as the shooter in a bank robbery. 429 F.3d at 1325. She was arrested and taken to the county jail for interrogation. *Id.* The plaintiff's lawyer was present and instructed the defendant investigators not to question the plaintiff in his absence. *Id.* The next day, and despite the lawyer's continued representation in the case, one of the investigators told the plaintiff that her lawyer no longer represented her, and following that exchange, the plaintiff signed a waiver of rights form and admitted that she had been present at the bank when the shooting occurred. *Id.* at 1326. On that day, and on the following days, the defendant investigators interviewed the plaintiff and, after stating that her lawyer had "bailed out" on her, explained that, absent a confession, she would "sizzle" and "fry" in the electric chair. *Id.* One of the investigators warned the plaintiff that, if she asked a family member to seek a lawyer on her behalf, the result would be disastrous. *Id.* Soon afterward, the defendant investigators released the plaintiff after eliminating her as a possible suspect. *Id.* During the course of the interviews, the plaintiff never confessed to any crime or otherwise incriminated herself. *Id.*

The plaintiff alleged against the defendant investigators the tort of outrage. *Id.* at 1329. The district court denied summary judgment on the plaintiff's outrage claim, but the Eleventh Circuit

20

reversed. *Id.* at 1331. Importantly, the district court had relied on *Woodley* by "[c]oncluding that [the defendant investigators had] similarly abused the public trust, specifically by lying to [the plaintiff] about her lawyers . . . ." *Id.* at 1330. Nevertheless, the Eleventh Circuit found "*Woodley* to be distinguishable in that the officer in that case was using information gained through his position of public trust to act outside the bounds of that position." *Id.* In *Tinker*, on the other hand, the defendant investigators "were falsely informing [the plaintiff] about her legal representation but with a view to accomplishing something within the bounds of their role as police officers." *Id.* In that regard, the court concluded that the conduct did not satisfy the "extreme and outrageous" prong of an outrage claim. *Id.* *Woodley*, therefore, has a limited field of operation and applies only when police officers, engaging in independently extreme and outrageous conduct, exploit their public position for private gain. In this case, however, Plaintiff has not alleged that Defendant McDuffy suppressed and/or altered the videotape in order to obtain some end ancillary to or distinct from the criminal investigation. Accordingly, *Woodley* does not authorize Plaintiff's outrage claim to proceed.

Finally, the court has reviewed a case it believes is most closely analogous – *McMillian v. Johnson*, 878 F. Supp. 1473 (M.D. Ala. 1995). There, the Middle District of Alabama denied the defendant police officers' motion for summary judgment as to the plaintiff's outrage claim.[4] In *McMillian*, the court identified three pieces of "clearly exculpatory" evidence the defendant police officers intentionally withheld from the plaintiff during his capital murder prosecution. 878 F. Supp. at 1506-10. According to the court, the suppression of each, which cumulatively resulted in the guilty verdict or, at the very least, cast doubt on the integrity of the criminal proceedings, violated

---

[4]The Eleventh Circuit reversed *McMillian* insofar as the Middle District of Alabama rejected the defendant police officers' claim to qualified immunity. *McMillian v. Johnson*, 88 F.3d 1554 (11th Cir. 1996). The Eleventh Circuit, however, did not review the district court's analysis of the plaintiff's outrage claim.

the Due Process Clause as interpreted by the *Brady* line of cases. *Id.* The *McMillian* court concluded that the plaintiff had stated a viable outrage claim sufficient to withstand a motion for summary judgment. In particular, the court reasoned that, as to the defendant police officers' suppression of material exculpatory evidence, the plaintiff offered sufficient evidence to present a cognizable claim of outrage under Alabama law – or, stated differently, to present a question of fact for the jury as to whether the conduct was "extreme and outrageous." *Id.* at 1543-44.

Although *McMillian* demonstrates that an outrage claim may proceed against a police officer for the alleged suppression of material exculpatory evidence, the present case is clearly distinguishable. In this case, unlike *McMillian*, Defendant McDuffy did not withhold evidence that otherwise he should have disclosed. As discussed above, because Plaintiff pleaded guilty to the criminal prosecution, the Due Process Clause did not compel the videotape's disclosure insofar as it constitutes impeachment evidence. *See* Discussion *supra* Part III.B; *see also Ruiz*, 536 U.S. at 633. And, alternatively, assuming that the Due Process Clause proscribes the suppression of exculpatory evidence even if the criminal defendant pleads guilty, the events depicted in the videotape are neither exculpatory nor inculpatory because they occurred after the charged offenses. *See* Discussion *supra* Part III.B. Accordingly, *McMillian*, which concluded that a jury could determine that a police officer's suppression of exculpatory evidence is "extreme and outrageous," is unhelpful here because Plaintiff has not alleged facts suggesting that Defendant McDuffy violated the Due Process Clause.

In sum, the court concludes that a police officer does not engage in "extreme and outrageous" conduct when he or she withholds evidence that he or she is not otherwise constitutionally required to disclose. To reach the contrary conclusion would impose upon police officers a set of indeterminate, extra-constitutional duties regarding the collection and retention of evidence legally

unrelated to a criminal prosecution.  Plaintiff has not offered any reasoned justification for supplanting the obligations imposed by the Due Process Clause in favor of the hazy, *ad hoc* determinations attendant to the tort of outrage.  Indeed, Plaintiff's position yields a curious result: a police officer, adhering to constitutional mandates, nevertheless, would be exposed to civil liability for engaging in conduct supposedly "beyond all possible bounds of decency."  In short, there is a manifest tension between the Due Process Clause and Plaintiff's expansive interpretation of the tort of outrage as applied to the instant allegations.  The more coherent approach, on the other hand, acknowledges that a constitutional violation[5] is a necessary – although insufficient – condition to state an outrage claim against a police officer when (1) the Constitution prescribes readily applicable rules of conduct and (2) the predicate conduct involves actions in the police officer's public capacity. Here, Defendant McDuffy was under no constitutional obligation to disclose the videotape because (1) Plaintiff pleaded guilty to the underlying criminal charges and (2) the videotape contained neither exculpatory nor inculpatory material.  Accordingly, because the court cannot conclude that the suppression of evidence in this case was "utterly intolerable," the Magistrate Judge's recommendation is due to be adopted, and Plaintiff's outrage claim against Defendant McDuffy is due to be dismissed.

**D.      Count Nine**

Finally, the Magistrate Judge recommended that Plaintiff's Count Nine, which alleges civil conspiracy, is due to be dismissed.  (Doc. #57 at 13).  Under Alabama law, "[a] civil conspiracy requires a combination of two or more individuals to accomplish an unlawful purpose or to

---

[5] A police officer's violation of some other law (*e.g.*, a statute, a city ordinance, etc.) likely would be a valid substitute for a constitutional violation.  *See, e.g.*, *Woodley*, 770 So. 2d at 1094-96.

accomplish a lawful end by unlawful means." *Nelson v. Univ. of Ala. Sys.*, 594 So. 2d 632, 634 (Ala. 1992) (citing *Eidson v. Olin Corp.*, 527 So. 2d 1283, 1285 (Ala. 1988); *Barber v. Stephenson*, 69 So. 2d 251 (Ala. 1953)).  "[L]iability for civil conspiracy rests upon the existence of an underlying wrong and if the underlying wrong provides no cause of action, then neither does the conspiracy." *Flying J Fish Farm v. Peoples Bank of Greensboro*, 12 So. 3d 1185, 1196 (Ala. 2009) (citing *Jones v. BP Oil Co.*, 632 So. 2d 435 (Ala. 1993); *Allied Supply Co. v. Brown*, 585 So. 2d 33 (Ala. 1991); *Webb v. Renfrow*, 453 So. 2d 724 (Ala. 1984)).  Further emphasizing the derivative nature of a civil conspiracy claim, the Alabama Supreme Court observed that "a conspiracy itself furnishes no cause of action.  The gist of the action is not the conspiracy but the underlying wrong that was allegedly committed." *Allied Supply Co.*, 585 So. 2d at 36 (citing *Massengill v. Malone Freight Lines, Inc.*, 538 So. 2d 784 (Ala. 1988); *Sadie v. Martin*, 468 So. 2d 162 (Ala. 1985)).  Accordingly, "[a] civil conspiracy cannot exist in the absence of an underlying tort." *Goolesby v. Koch Farms, LLC*, 955 So. 2d 422, 430 (Ala. 2006); *see also Funliner of Ala., L.L.C. v. Pickard*, 873 So. 2d 198, 211 (Ala. 2003) ("A civil conspiracy is not an independent cause of action.") (citing *Drill Parts & Serv. Co. v. Joy Mfg. Co.*, 619 So. 2d 1280, 1290 (Ala. 1993)).

In response to Defendants' motion to dismiss, Plaintiff generally argues that "Defendant McDuffy requested a copy of the videotape for the prosecution of Plaintiff in an attempted murder charge and specifically requested that the video be altered to delete the portion of th tape which included the beating of the Plaintiff." (Doc. #41 at 12).  In Plaintiff's objection to the Magistrate Judge's recommendation, he specifically identifies Alabama Code § 13A-10-129 as the predicate illegal act allegedly sufficient to sustain his civil conspiracy claim.  (Doc. #58 at 14).  In this regard, he does not designate any other purported illegality as the basis for his cause of action.  The court,

therefore, confines its review only to whether a violation of Alabama Code § 13A-10-129 is sufficient, as a matter of law, to state a civil conspiracy claim against Defendant McDuffy.

According to Alabama Code § 13A-10-129, "Tampering with Physical Evidence," the following conduct is illegal:

> (a)     A person commits the crime of tampering with physical evidence if, believing that an official proceeding is pending or may be instituted, and acting without legal right or authority, he:
>> (1)     Destroys, mutilates, conceals, removes or alters physical evidence with intent to impair its use, verity or availability in the pending or prospective official proceeding; or
>> (2)     Knowingly makes, presents or offers any false physical evidence with intent that it be introduced in the pending or prospective official proceeding.
> (b)     "Physical evidence," as used in this section, includes any article, object, document, record or other thing of physical substance.
> (c)     Tampering with physical evidence is a Class A misdemeanor.

ALA. CODE § 13A-10-129.  The court assumes without deciding that Plaintiff has alleged facts sufficient to suggest that Defendant McDuffy has committed this offense.  Nevertheless, § 13A-10-129, on its face, does not authorize a private plaintiff to institute a civil action against an offender; instead, the Code provision is criminal in nature and, accordingly, assigns the task of enforcement to the State.  But consistent with established Alabama law, a civil conspiracy claim is unsustainable if the predicate act does not afford a private plaintiff with a cause of action.  *See, e.g.*, *Goolesby*, 955 So. 2d at 430.  Because Plaintiff has identified no authority for pursuing private relief under a public act, his civil conspiracy claim, which necessarily is derivative, is due to be dismissed for its failure to vindicate a private right.

**IV.     CONCLUSION**

For the foregoing reasons, the Magistrate Judge's Report and Recommendation is due to be adopted, and Plaintiff's Counts Four, Five, Eight, Nine, and Eleven are due to be dismissed with prejudice against Defendants McDuffy and City of Hoover.   A separate order will be entered contemporaneously herewith.

**DONE** and **ORDERED** this _____13th_____ day of August, 2010.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE